UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CHARLES J. BALL,                                :
                                                :
                               Plaintiff,       :          21 Civ. 6159 (LGS) (GS)
                                                :
                                                :
                - against -                     :                    ORDER
                                                :
METRO-NORTH COMMUTER RAILROAD,                  :
                                                :
                               Defendant.       :
---------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Charles J. Ball ("Plaintiff" or "Ball") moves to compel the production of documents and other materials in response to an extensive set of discovery demands propounded on Defendant Metro-North Commuter Railroad ("Defendant" or "MNR").  For the reasons set forth below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This action arises from Plaintiff's allegations that he suffered serious and disabling injuries on February 24, 2019 when, while working as a third-rail electrician for MNR, he received an electrical shock from a "live jumper" in a work zone at Grand Central Terminal.  (Dkt. No. 1 ("Complaint" or "Compl.") ¶¶ 7-8).  Claiming that his injuries were caused by MNR's negligence, Plaintiff seeks damages under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*.  (*Id.* ¶¶ 1, 9, 11).

According to Plaintiff, on the day in question, he was assigned to re-attach an electrical lead cable to a newly replaced third rail.  (Dkt. No. 29 at 2).  Unbeknownst

to Plaintiff, the cable carried a live current. (*Id.*). Plaintiff claims that live current should generally not be introduced into a work zone and that, in the rare instances where it is, a warning tag should be prominently affixed to the cable alerting workmen to this danger. (*Id.*). Seeing no such tag, Plaintiff knelt down, touched the cable, and was immediately shocked. (*Id.*).

Defendant denies any negligence and claims Ball's own negligence was the sole cause of his injuries. (Dkt. No. 24 at 1). According to MNR, the cable did bear a warning tag and Plaintiff ignored it. (Dkt. No. 49 at 3 n.1 & Ex. A). At an internal disciplinary hearing, both Plaintiff's foreman, Peter Famularo, and another rail worker, Stephen Jost, testified that warning tags were visible on the cable. (Dkt. No. 29 at 2). Following this internal disciplinary hearing, MNR determined that the incident was Ball's own fault and fired him. (*Id.*).

So far, the facts describe a conventional workplace negligence claim. In the midst of discovery more than a year after filing the Complaint, however, Plaintiff put forth an "altern[ative] theory of this case." (*Id.* at 3). Under to this theory, Famularo, Jost, and perhaps others at MNR "participated in a deliberate scheme to silence, seriously injure, disable and/or kill Charles Ball," by intentionally setting him up to be electrocuted. (*Id.*). It was, according to Ball's counsel, a case of "attempted murder." (Transcript of November 20, 2023 Discovery Conference (Dkt. No. 59) ("Tr.") at 5:9-10).

Plaintiff asserts that Famularo and Jost were motivated to kill him because they viewed him as a "chronic whistle blower." (Dkt. No. 29 at 3). Plaintiff had

made numerous complaints to MNR accusing Famularo of, *inter alia*, creating a racially hostile work environment, and Jost allegedly attempted to engage Plaintiff in a fistfight.  (*Id.* at 2-3).  Plaintiff further asserts that MNR can be held liable under this alternative theory for negligently failing to prevent the intentionally tortious conduct of Famularo and Jost.  (*Id.* at 3-4).

In aid of this additional theory of liability, as well as his conventional negligence theory, Plaintiff propounded a wide-ranging "Notice of Discovery" described by his counsel as "an extensive discovery document request seeking some 181 items."  (*Id.* at 4-5; *see* Dkt. No. 47-2 ("Plaintiff's Notice for Discovery")).  Defendant objected to the majority of these requests, disputing their relevance, asserting that they are overbroad, and raising various other objections.  (*See* Dkt. No. 29 at 5; Dkt. No. 47-3).  Several meet-and-confer sessions narrowed the scope of the dispute, but very substantial disagreements remained.  (*See* Dkt. Nos. 31, 32).

Due at least in part to a medical issue involving Plaintiff's counsel, the dispute was still unresolved as of September 2023, when the Court held a status conference with the parties and directed that letter briefs be filed.  (*See* Dkt. Nos. 44, 45, and Minute Entry dated Sept. 26, 2023).  Plaintiff submitted a letter brief on October 30, 2023 (Dkt. No. 47-48), Defendant filed its letter brief on November 13, 2023 (Dkt. No. 49), and Plaintiff submitted a reply on November 15, 2023 (Dkt. No. 50).

On November 20, 2023, the Court conducted a lengthy in-person discovery conference.  At the conference, the parties agreed that (1) Plaintiff is entitled to

pursue his alternative theory of negligent supervision liability against MNR based on his coworkers' alleged intentional tortious conduct; and (2) such a theory requires Plaintiff to show the requisite prior knowledge on the part of MNR that Plaintiff's coworkers had a propensity to commit such an act.  (Tr. at 3-4; *see also* Dkt. No. 49 at 2 (MNR's acknowledgment that FELA claims can encompass intentional or criminal misconduct of a plaintiff's coworker and that the employer can be held liable for such misconduct on a negligent supervision theory)).

The Court proceeded to make rulings at the conference regarding certain of Plaintiff's document requests and asked the parties to jointly submit a chart identifying the remaining disputes and the parties' positions on each contested item.  (*See* Tr. at 71-74).  The parties submitted this chart on December 11, 2023. (Dkt. No. 53 (the "Chart")).  The Chart runs to some 80 pages and shows that the parties continue to dispute, in some fashion or another, over 100 of the document requests in Plaintiff's Notice of Discovery.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  In evaluating what information is discoverable, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." *Id.* The information sought need not be admissible at trial to be discoverable. *Id.*

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792, (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (cleaned up). "To satisfy this standard, 'the moving party must articulate a concrete linkage between the discovery sought and the claims or defenses asserted in the case.'" *Ekstein v. Poito Assoc.*, No. 20 Civ. 1878 (JCM), 2022 WL 783000, at *3 (S.D.N.Y. Mar. 15, 2022) (quoting *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16 Civ. 2242 (VEC), 2018 WL 4112816, at *1 (S.D.N.Y. Aug. 29, 2018)) (cleaned up).

The party moving to compel discovery "bears the initial burden of demonstrating that the information sought is relevant and proportional." *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18 Civ. 3025 (PGG) (VF), 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022); *see also Citizens Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("Plaintiffs, as the parties seeking discovery from [defendant], bear the initial burden of proving that the information and documents sought are relevant and proportional to the needs of the case."). Once the moving party has made this showing, "the burden shifts to the opposing party to justify curtailing discovery." *Sportvision*, 2022 WL 2817141, at *1.

Federal district courts have broad discretion in ruling on a motion to compel discovery. *See Grand Cent. P'ship. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999); *see also EM Ltd. v. Rep. of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("A district court has broad latitude to determine the scope of discovery and to manage the discovery process."); *Ekstein*, 2022 WL 783000, at *3 ("District courts have broad discretion to manage the scope of discovery and decide motions to compel.").

## DISCUSSION

The Chart jointly submitted by the parties lists all 181 discovery items requested by Plaintiff in his Notice for Discovery. (Dkt. No. 53).[1]  For reach item, the Chart contains columns describing the materials sought; whether the item is still in dispute and any ruling by the Court as to the item at the November 20, 2023 conference; Defendant's objection/position on the item; and Plaintiff's response/position on the item. (*Id.*). The Court has carefully reviewed the Chart, the underlying Notice for Discovery and Defendant's Response thereto, and the parties' arguments as set forth in their letter briefs and at the conference.

### A. Requests That Are No Longer in Dispute

Of the 181 discovery items in question, the Chart indicates that 65 of them are either no longer in dispute, or have been withdrawn, or are duplicative of other Requests. This is true of the following items: Request Nos. 1-5, 9-13, 15-22, 24, 26-27, 29, 33-34, 85-86, 113, 115-16, 126, 127b, 133-42, 148-66, 169-71 and 178.

---

[1] Although the last entry in the Chart is numbered 180, there are two items numbered 127 (127a and 127b), two others numbered 72 (72 and 72.5), but there is no Request No. 125 due to an apparent numbering error, bringing the total to 181.

With respect to Request No. 22, which seeks mitigation-of-damages documents, Defendant has agreed to respond to this request following Plaintiff's deposition.  Plaintiff asks that Defendant provide its response within 30 days of Plaintiff's deposition.  (Chart at 4).  As 30 days is the normal time to respond to a document request, *see* Fed. R. Civ. P. 34(b)(2)(A), the Court agrees and directs Defendant to respond to this request within 30 days of Plaintiff's deposition.

**B.  Requests That Were Ruled on at the Discovery Conference**

As the Chart reflects, the Court made rulings on several of the Requests at the discovery conference held on November 20.  The Court adheres to those rulings with certain modifications, as noted below.

**1.  Documents Relating to Richard Ranallo**

At the November 20 conference, the Court denied Plaintiff's Requests for various files pertaining to Richard Ranallo, a former MNR supervisor.  Plaintiff notes that Ranallo was accused of appearing in blackface at a party in 2013, which created a public outcry when it surfaced five years later.  (Dkt. No. 29 at 4 n.2; Dkt. No. 47-6 at 1-3).  But that incident was unrelated to Plaintiff, and Ranallo had left MNR by the time of the February 24, 2019 incident.  (Tr. 23-26).  Accordingly, Defendant need not respond to Request Nos. 39, 43, 47, 51, 55, 59, 63, 72.5, 74, 81, 120, 121, and 173 (and portions of other Requests relating to Ranallo), as Plaintiff has not shown that the information sought is relevant and proportionate to the issues in this case.

### 2. Request Nos. 30-32

Request Nos. 30, 31, and 32 seek documents relating to US EEOC, internal MNR EEO, and internal MNR Diversity Department matters arising out of "complaints made by plaintiff, or matters in which plaintiff was a witness, or wherein plaintiff provided information to any investigating or regulatory body." (Dkt. 47-3 at 16-17). MNR objected on the grounds, *inter alia*, that the Requests are "vague and overbroad in seeking materials pertaining to any matter in which the plaintiff ever provided information to any investigating or regulatory body." (*Id.*). At the November 20 conference, the Court ordered MNR to search for and produce, in response to Request Nos. 30, 31, and 32, records relating to complaints filed by Plaintiff concerning the conduct of Famularo or Jost.[2] (Tr. 22-30). Otherwise, the Court ruled that these Requests are not relevant or proportionate and it would be overly burdensome for MNR to search for records where Plaintiff was merely a witness or provided information. (*Id.*).

To the extent that Plaintiff's comments in the Chart ask the Court to revisit this determination, that request is denied. The Court does, however, take note that Plaintiff did provide Defendant with copies of documents reflecting complaints made by Plaintiff arising from the conduct of Famularo and Jost. (*See* Chart at 6-7 (citing "Bates 706-743")). Defendant must take this information into account in

---

[2] In the Chart, MNR characterizes the Court's ruling as encompassing "complaints by plaintiff *against* Peter Famularo or Stephen Jost." (Chart at 5-7; emphasis added). This is incorrect. The complaint need not specifically name Famularo or Jost as the equivalent of an adverse party to be responsive. The Court's ruling was directed at "complaints by Mr. Ball about the conduct of" Famularo or Jost. (Tr. 22).

searching for responsive documents.  In addition, Plaintiff may renew his request for other documents pertaining to Famularo or Jost embraced by these Requests if he is able to provide further identifying details at his deposition.

### 3.  Request Nos. 35-36

Requests Nos. 35 and 36 seek MNR labor relations and disciplinary records, as well as MNR government regulatory records, relating to Famularo, Jost, and four other individuals.  (Dkt. No. 47-3 at 18-19).[3]  At the November 20 conference, the Court ruled that MNR is required to produce certain documents in response to these Requests, as reflected in the Chart, but that these Requests are otherwise overbroad.  (*See* Tr. 32-55; Chart at 8-9).  To the extent that Plaintiff's comments in the Chart ask the Court to revisit the latter determination, the request is denied.

### 4.  Request No. 65

Request No. 65 seeks all records of Sofia Hubscher, an in-house lawyer at MNR (Tr. 61:14-15), regarding Plaintiff and four other individuals.  (Dkt. 47-3 at 29).  The Court denied this request as overbroad, but invited Plaintiff to come up with a more targeted request.  (Tr. 63-64).  In the Chart, Plaintiff points to authorizations for medical records that Plaintiff allegedly supplied to Hubscher, as well as to MNR's outside counsel in this case, and requests production of "all records obtained by reason of these authorizations."  (Chart at 28).

Although this request, couched in the form of a statement of Plaintiff's position on Request No. 65 (which relates solely to Hubscher's files), would not

---

[3] One of the individuals embraced in Request Nos. 35 and 36 is Ranallo.  (Dkt. No. 47-3 at 18-19).  As noted above, Plaintiff is not entitled to Ranallo-related documents.

appear to be in the correct format (unless Plaintiff believes all such medical records would now be found in Hubscher's files), Plaintiff appears to be entitled to this information.  Accordingly, Defendant is directed to produce any of Plaintiff's medical records obtained by means of authorizations provided by Plaintiff to Hubscher or MNR's counsel in this case, to the extent those records have not already been produced.

### C.  Requests as to Which Defendant Has Represented It Has Searched For and Produced Any Responsive Documents

There are a number of Requests where (1) Defendant states that it agreed to produce responsive documents and either did produce the responsive documents or was unable to locate any responsive documents and (2) Plaintiff contends that there must be additional responsive documents and/or demands that Defendant identify the "who, what, when, and where" of the search that was conducted and (if no records were found) provide a sworn statement from the person who conducted the search.  This is the case with respect to the following items: Request Nos. 6, 87-88, 93-98, 103, 105-06, 108-09, 111-12, 122, 127a, and 179-80.

Drawing on his experience with FELA cases and with MNR specifically, Plaintiff's counsel expresses varying degrees of incredulity as to how Defendant's counsel can claim that these documents do not exist when, in the view of Plaintiff's counsel, they should exist.  (*See, e.g.*, Chart at 1-2, 45-46, 61-62).  Yet the Court is entitled to rely on the representations of Defendant's counsel, as an officer of the Court, that he has discharged his obligation to conduct a diligent and reasonable search and has produced all responsive documents yielded by such a search, if any.

10

*See, e.g.*, *Greer v. Carlson*, No. 20 Civ. 5484 (LTS) (SDA), 2020 WL 7028922, at *3 (S.D.N.Y. Nov. 29, 2020) (relying on defense counsel's representation that documents sought by plaintiff did not exist; "counsel is admitted to practice in this Court and is an officer of the Court" and "[i]f a statement made by counsel is false, he can be subject to discipline"); *Kozak v. Office Depot, Inc.*, No. 16 Civ. 943 (LJV) (JJM), 2020 WL 12957618, at *2 (S.D.N.Y. June 22, 2020) (relying on defense counsel's representation that it had produced all documents responsive to plaintiff's request, as "[t]he court is entitled to rely on the representations of counsel, as officers of the court") (citation omitted).

That said, it is unclear whether Defendant's counsel has considered the comments made by Plaintiff's counsel (as set forth in the last column of the Chart) as to why additional responsive documents should exist and whether Defendant's search efforts have taken that information into account.  At least some of Plaintiff's counsel's observations raise legitimate questions as to whether more documents exist.  Defendant's counsel is directed to consider Plaintiff's counsel's comments, to the extent he has not already done so, and advise the Court within 14 days of this Order as to whether, having done so (including consulting with his client as appropriate), he stands by his representations that there are no additional responsive documents with regard to these Requests.

In addition, with regard to Request Nos. 8, 14, and 28, Defendant's response in the Chart suggests that it has produced all responsive documents, but does not explicitly say so.  Defendant's counsel is directed to advise the Court within 14 days

of this Order whether, after having taken into consideration the comments provided by Plaintiff's counsel pertaining to these Requests, he represents that there are no additional responsive documents with regard to the Requests.[4]

Further, Plaintiff raises a particular issue with regard to Defendant's representation that it was unable to locate the original "Do Not Operate" tags (Request No. 112) that Defendant claims (and Plaintiff disputes) were affixed to the electrical cable at the time of the February 24, 2019 incident. (Chart at 62-63). Plaintiff asserts that the original tags were available at the time of Plaintiff's disciplinary trial and that there was a dispute as to the authenticity of the tags. (*Id*.). Plaintiff suggests he may seek spoliation remedies based on the absence of the original tags. (*Id*.). With respect to this one Request only, Defendant shall either provide a sworn statement from, or allow Plaintiff to depose, a witness with personal knowledge as to the efforts made to search for the tags and MNR's understanding as to why the tags are no longer available.

## D. Requests as to Which Defendant Has Represented It Will Produce Responsive Documents

Similarly, the Chart references several Requests where Defendant has agreed to produce responsive records or information and represents it will supplement its

---

[4] Plaintiff claims that Defendant's response to Request No. 28 is incomplete because it does not include records related to incidents dated February 28, 2018, July 18, 2013, October 22, 2017, September 7, 2017 and March 14, 2019. (Chart at 5). But Request No. 28 pertains to Plaintiff's labor relations department files. (Dkt. No. 47-3 at 15). If records relating to these incidents are in the labor relations files, then they should be produced. If they are not, then they need not be produced in response to this Request. Although Request No. 28 also requests "records regarding all matters involving the plaintiff," this part of the request is overly vague and broad. The Court also notes that records pertaining to the February 18, 2018 incident between Plaintiff and Jost should be responsive to other of Plaintiff's Requests in view of the rulings in this Order.

responses to do so:  Request Nos. 7, 71-72, 100-02, 104, 107, 114, 147, and 174-77.

Understandably, Plaintiff's counsel asks to know when Defendant will produce

these records.  (Chart at 2, 32, 55-56, 58, 64, 73). Defendant is hereby directed to

produce the records responsive to these Requests (as indicated in the Chart) by no

later than 30 days from the date of this Order.

### E.  Requests for Files of Individual MNR Employees

#### 1.  Request Nos. 37-64

Plaintiff propounds a series of broad requests for "[a]ll" files, emails, and

other documents of seven MNR employees and former employees "regarding"

Plaintiff, Famularo, or Jost.  These are contained within Request Nos. 37 through

64.[5]  The seven individuals include Catherine Rinaldi, MNR's President (Chart at

13); Danilo Ortiz, a former supervisor in the MNR Power Department where

Plaintiff worked (*see* 47-3 at 2); and Roberto Aguirre Sr., Mayela Clark, Pablo

Quezada, Kaylan Doyle, and Bernadette Nespole, who are (or were) employees of

MNR's Office of Diversity and EEO or its Human Resources department (Chart at

12-27).

Plaintiff has provided documents reflecting that each of these individuals

received or was otherwise involved in complaints that Plaintiff made over the years

regarding Famularo and Jost (as well as others).  (*See* Chart at 10-27; Dkt. Nos. 47-

7, 47-8).  Defendant objects that the Requests are overbroad and/or duplicative of

---

[5] These Requests embrace these same individuals' files regarding Ranallo.  (*See* Request Nos. 39, 43, 47, 51, 55, 59, and 63).  As noted above, the Court has already ruled that Plaintiff is not entitled to the Ranallo-related documents.

other requests.  (Chart at 10-27).  Nonetheless, Defendant offers to review the EEO

and Human Resources employees' emails for three years prior to the February 24,

2019 incident and produce emails that "could show a propensity for workplace

violence or unsafe supervision" on the part of Famularo and emails that "could show

a propensity for workplace violence" on the part of Jost.  (*Id.*).  Defendant also offers

to search Ortiz's former office for any physical files.  (*Id.* at 14-16).

The Court agrees that these Requests are too broad insofar as they seek all

documents relating, in any way, to Plaintiff, Famularo, and Jost for an indefinite

time period.  However, the Court also views Defendant's proposal as too narrow, in

a number of respects.

First, with respect to subject matter: Instead of documents that could show a

propensity for workplace violence or unsafe supervision, the scope of the documents

to be produced shall extend to documents that relate to any incident, allegation, or

complaint involving Famularo and/or Jost and Plaintiff; that reflect any statement

by Famularo and/or Jost about Plaintiff or any animus or animosity toward, or

dislike of, or threats directed against, Plaintiff; or that relate to, or could show a

propensity for, workplace violence, threatening or assaultive behavior, intentional

disregard for the safety of other employees, or unsafe work practices or supervision

on the part of Famularo and/or Jost.

Second, with respect to time frame: Plaintiff alleges that he first began

making complaints about Famularo in November 2015.  (Dkt. No. 47-8 at 7).

Accordingly, instead of three years prior to the date of the February 24, 2019

incident (which would be February 2016), emails should be searched going back to November 2015.

Third, with respect to email custodians: MNR does not propose any email search of Ortiz's emails, but offers no explanation for this limitation. Ortiz's emails should be searched in the same manner as those of other MNR employees.

Fourth, with respect to searches of physical files: MNR's position is that it should not be required to conduct *any* search of the EEO and Human Resources employees' individual, physical files. Given that Plaintiff has provided documentary evidence that all of these employees received or were involved with Plaintiff's complaints at one time or another, this position is unjustified. Defendant has already offered to conduct a search of these employees' emails for responsive documents and there is no reason why the employees might not also have responsive documents in hard-copy form (*e.g.*, handwritten notes, copies of complaints, etc.). Therefore, Defendant shall conduct a reasonable search for any documents responsive to these Requests (as narrowed by this Order) going back to November 2015.

Fifth, with respect to Rinaldi: While the Court agrees that Rinaldi's records need not be searched to the same extent as those of Ortiz and the EEO and Human Resources employees, Plaintiff has provided a letter he allegedly sent to Rinaldi after the February 24, 2019 incident. (Dkt. No. 47-8 at 7-8.) Defendant shall produce any documents in Rinaldi's hard-copy or electronic files relating to this

letter, including any inquiries made or information received by Rinaldi concerning
the allegations in the letter.

Finally, Defendant represents that: (1) "so far as it can determine," former
MNR employees Aguirre, Quezada and Doyle "did not leave behind any materials
responsive to" these Requests; and (2) it previously indicated to Plaintiff that it had
searched Clark's, Doyle's, and Nespole's emails for references to Plaintiff and that
those searches either did not yield any results or, in the case of Doyle, revealed only
one responsive document (which was produced to Plaintiff). (Chart at 10, 19, 22, 24,
25, 27). As noted above, as a general matter, the Court is prepared to accept
defense counsel's representations. However, it is unclear whether these particular
representations reflect a reasonable search consistent with MNR's discovery
obligations and cover the full temporal and subject-matter scope for the relevant
Requests as set forth in this Order. Defendant's counsel shall advise the Court and
Plaintiff within 14 days of this Order whether this is the case.

### 2. Request No. 66

Defendant asserts it should not have to search for documents from the files of
Helen Maldonado, an MNR Human Resources employee. (Chart at 28-29; Request
No. 66 (seeking all files and emails of Maldonado regarding Plaintiff, Famularo, and
Jost)). Plaintiff states that he had contact with Maldonado regarding his return to
work in March 2019, following the February 24, 2019 incident, and claims "she has
a lot to mention regarding the medical management of plaintiff's injuries." (Chart
at 28-29). Defendants shall produce documents from Maldonado's files and emails

16

regarding Plaintiff's return to work and medical issues related to the February 24, 2019 incident.  Beyond this, and given that Plaintiff has not indicated any relevant information Maldonado would have regarding Famularo or Jost, MNR need not search for documents from Maldonado.

### 3.  Request No. 172

Request No. 172 seeks all records of Ortiz regarding Matt Kruger, a supervisor in the department where Plaintiff worked.  (Dkt. No. 47-3 at 2). Defendant offers to "search" Ortiz's former office for any physical file concerning Kruger, but says nothing about what documents it would produce based on this search.  (Chart at 77).  The Court shall apply to this Request similar parameters to those set forth above with respect to Request Nos. 37-64:  Defendant shall conduct a search of both Ortiz's office and emails going back to November 2015 and produce documents during that time frame that relate to any incident, allegation, or complaint involving Kruger, Famularo and/or Jost and Plaintiff; that reflect any statement by Kruger, Famularo and/or Jost about Plaintiff or any animus or animosity toward, or dislike of, or threats directed against, Plaintiff; or that relate to, or could show a propensity for, workplace violence, threatening or assaultive behavior, intentional disregard for the safety of other employees, or unsafe work practices or supervision on the part of Kruger, Famularo and/or Jost.

## F.  Requests Relating to the "Al Guadalupe" Incident

Request Nos. 69, 70, 144, 145, and 146 relate to a purported incident at MNR's Mott Haven Yard during which, according to Plaintiff, an employee named

Jamie Calle was injured and, as a result, an employee named Al Guadalupe (also spelled as "Al Guadeloupe" in Plaintiff's requests) was brought up on disciplinary charges. Plaintiff claims that the incident was similar to the February 24, 2019 incident in which he was injured in that it involved power being introduced into a work zone. (Tr. 65; Chart at 30). Plaintiff seeks all documents in MNR's possession regarding this so-called "Al Guadalupe incident" and all documents in MNR's possession regarding Jaime Calle.

Defendant expresses uncertainty over what incident Plaintiff is referring to, stating that its search for responsive materials only revealed an incident involving Calle and Guadalupe in October 2014, whereas Plaintiff claims the incident he is referring to took place in approximately 2016. (Chart at 72-73 (Nos. 144-45)). Defendant also objects to Plaintiff's Requests as overbroad and as duplicative of one another. (*Id.* at 30-31, 72-73).

Plainly, Plaintiff's requests for every document regarding this incident and Calle are overbroad. However, Plaintiff is entitled to some limited discovery regarding this incident. In the first instance, Defendant is directed to produce documents sufficient to show the basic facts regarding the Al Guadalupe incident, whether there was a disciplinary proceeding, and, if there was, a list of the witnesses who testified at that proceeding (so that Plaintiff can determine if any of the same witnesses testified at his disciplinary proceeding). After reviewing those materials, Plaintiff may make follow-up requests for additional documents, to the extent relevant and proportionate, including (by way of example) documents

showing any remedial measures taken by MNR as a result of the incident and transcripts of the testimony of relevant witnesses.  Unless Defendant is able to identify an "Al Guadalupe" incident that bears a greater resemblance to the incident described by Plaintiff than the October 2014 incident, it shall produce this information for the October 2014 incident.

### G.  Requests for Documents of Outside Counsel

Request Nos. 67 and 68 seek documents from MNR's outside litigation counsel in this case.  While Request No. 67, as original drafted, is extremely broad and unclear, Plaintiff has clarified that what he actually seeks is records obtained by MNR or defense counsel from authorizations provided by Plaintiff prior to the time Plaintiff retained his current counsel.  (*See* Chart at 29).  As noted above, the Court agrees that Plaintiff is entitled to such records, to the extent Defendant has not already produced them, whether they are in counsel's files or otherwise.

Request No. 68 seeks all non-privileged records "received by" MNR's outside counsel regarding Plaintiff from its client, MNR, prior to Plaintiff's retention of his current counsel.  (Dkt. 47-2 at 13; Chart at 30).  The purpose of this request, and what relevant and proportionate information it is designed to yield, are unclear.  Of course, if there are responsive and non-privileged documents which MNR gave to its outside counsel, such documents would have to be produced even if they are no longer in MNR's possession.  *See, e.g.*, *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 2001 WL 1356192, at *5 (S.D.N.Y. Nov. 2, 2001) (nonprivileged

documents do not "become cloaked with privilege solely because [the client] sent them to his attorney").

But Plaintiff does not contend that is the case or limit Request No. 68 to such documents. To the extent that Plaintiff seeks to obtain from litigation counsel the same documents he can obtain (or has already obtained) from MNR itself, the request creates an undue burden and implicates attorney-client privilege concerns that are not justified by any articulated need by Plaintiff for these records. *See, e.g.*, *Brunckhorst v. Bischoff*, No. 21 Civ. 4362 (JPC), 2023 WL 3090950, at *3-5 (S.D.N.Y. Apr. 26, 2023) (discussing need for limits on document requests addressed to litigation counsel under the principles set forth in *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003)); *Varbero v. Belesis*, No. 20 Civ. 2538 (LJL), 2020 WL 7043503, at *2-3 (S.D.N.Y. Dec. 1, 2020) (quashing document subpoena served on defendant's litigation counsel where, *inter alia*, plaintiff "has not demonstrated that the information he is seeking cannot be obtained from a [different] source," and noting that "[c]ourts have been particularly concerned about the burdens imposed on the adversary process when lawyers themselves are the subject of discovery requests") (citation omitted).

**H. Requests for Documents Relating to Generalized Workplace Issues**

Plaintiff makes a series of broad requests for documents relating to Famularo and Jost and complaints filed by Plaintiff, of any nature, regardless of whether they bear any nexus to the February 24, 2019 incident or to Plaintiff's relationship with Famularo and/or Jost. Thus, Plaintiff seeks documents relating to "all claims of

mistreatment of subordinate employees by Peter Famularo" (Request No. 73); "all matters regarding Stephen Jost, whether formally filed or not" (Request No. 75); and "all complaints filed by plaintiff regarding the conduct of his co-employees regardless of whether or not they were superior, comparable, or inferior in job rank/status" (Request No. 76), including documents "of" two email addresses at MNR to which Plaintiff addressed a complaint in January 2014 about Ranallo (which has no apparent connection to Famularo or Jost) (Request Nos. 77 and 78). Plaintiff also seeks "all complaints against plaintiff" by Famularo, Jost, Ortiz, Ranallo, Kruger or Dave Hulford (Request No. 83), as well as "all records of Roberto Aguirre" with regard to these same individuals (Request No. 84). None of these Requests has any time limitation.

These Requests are far too overbroad and Plaintiff has proposed no meaningful narrowing of them. Apparently Plaintiff hopes, through these Requests, to show that MNR was "a workplace out of control" (Chart at 40)—or as Defendant characterizes it, "to put the entire department and perhaps the entire railroad on trial for all kinds of alleged misconduct." (Tr. 35). But Plaintiff is not entitled to do this: this case is about the allegedly unsafe conditions that caused Plaintiff's alleged injuries on February 24, 2019 and Plaintiff's claim that Famularo and Jost intentionally caused those injuries. To the extent that materials concerning those issues are encompassed within these Requests, Plaintiff will be receiving those materials pursuant to his other requests, as set forth in this Order (*e.g.*, Request Nos. 30-32, 37-64, 79-80). To the extent Plaintiff seeks discovery of complaints by

him unrelated to Famularo or Jost, or complaints about Famularo or Jost unrelated

to him, he has failed to show the information is relevant and proportionate to the

claims in this litigation.

## I. Requests Relating to Specific Incidents

By contrast, other of Plaintiff's requests relate to specific complaints made

against Famularo and Jost, including a September 13, 2017 incident between

Plaintiff and Jost (Request No. 79); a December 13, 2018 charge of discrimination

by Plaintiff against Famularo (Request Nos. 80 and 123); a December 23, 2013

complaint of discrimination regarding Famularo by another MNR employee on

December 18, 2013 (Request Nos. 82, 99, and 119); unspecified "workplace

occurrences" involving Famularo on ten different dates in 2012 (Request No. 117);

an incident (date unspecified) when Famularo allegedly "spit on a burning bracket"

causing damage to a rail (Request No. 118); and a motor vehicle accident involving

Famularo (date unspecified) in which an individual named Harold Sullivan was

injured (Request No. 143).

Plaintiff has provided the complaints he filed within MNR with respect to the

September 13, 2017 incident involving Jost and the December 13, 2018 incident

involving Famularo.  (Dkt. Nos. 47-7 at 18, 47-8 at 27).  Defendants thus have

ample information to conduct a search for, and produce, documents relating to these

incidents (to the extent it has not already done so).  Defendant's objections that

Request Nos. 79 and 80 are too broad and confusing or seek irrelevant information

(Chart at 35-36) are insubstantial and thus are overruled.

On the other hand, the December 23, 2013 complaint relates to an allegedly racist remark by Famularo more than five years before the February 24, 2019 incident in question. (*See* Dkt. No. 47-7 at 21). The incident has no apparent connection to Plaintiff. Plaintiff is already aware of the alleged remark and the conclusions of MNR's investigation into the matter. (*Id.*). Requiring MNR to produce the full investigative file concerning this incident, as sought in Request Nos. 82, 99, and 119, would not be relevant or proportionate. However, Defendant is directed to produce any written statement or oral testimony provided by Famularo in connection with that investigation.

Request Nos. 117, 118, and 143 are even further afield. "Workplace occurrences" in 2012, the "spitting" incident, and a motor vehicle accident bear no discernible relevance to the claims made by Plaintiff against Famularo in this lawsuit. Defendant is not required to respond to these Requests.

Plaintiff's arguments to the contrary—such as counsel's exclamation, in relation to the spitting incident, that "Pete Famularo caused damage to MNR property!!!" and his claim that these incidents go to MNR's awareness of Famularo's "unfitness for the Foreman's job" (Chart at 54-55, 65)—are wholly unpersuasive. To prevail on his alternative intentional tort theory, Plaintiff will have to establish MNR's knowledge of Famularo's propensity for "the type of behavior that caused plaintiff's harm." *Stoia v. Long Island R. Co.*, No. 13 Civ. 2060 (FM), 2015 WL 5098795, at *5 (S.D.N.Y. Aug. 31, 2015) (citation omitted). Knowledge that Famularo had previously "caused damage to MNR property," or of his purported

"unfitness" to be a foreman for reasons having nothing to do with the type of intentional misconduct that Plaintiff claims led to his harm, is irrelevant.  *See Higgins v. Metro-North R. Co.*, 318 F.3d 422, 427 (2d Cir. 2003) (Metro-North's knowledge that employee had difficult controlling his temper "would not have put Metro-North on notice that he was prone to sexually harass his co-workers").

### J.  Requests Relating to PPE

Request Nos. 89 and 90 relate to personal protection equipment ("PPE") which Plaintiff contends MNR required him to make use of but failed to provide to him.  (Dkt. No. 47-3 at 39-40).  Plaintiff asks MNR to itemize all such PPE "during the course of his employment" (Request No. 89) and provide all instructions, manuals, rules, policies and procedures, etc. relating to such PPE (Request No. 90).  Defendant responded to these requests by stating that MNR had provided Plaintiff with all necessary PPE or allowed Plaintiff to obtain the PPE.  (Chart at 43-44).

Plaintiff claims this response is "an exercise in Orwellian 'double speak'" because Defendant, in response to Request No. 87, stated that it did not have records of what PPE was provided to Plaintiff as of the February 24, 2019 incident.  (*Id.*).  The Court discerns no inconsistency in Defendant's responses.  Request Nos. 89 and 90 assume that MNR failed to provide Plaintiff with required PPE.  Defendant does not share that assumption, and therefore reasonably states it has no responsive information.  Defendant did respond to Plaintiff's separate requests for instructions, manuals, rules, policies and procedures, etc. for the use of PPE (Request Nos. 91-92) that were not limited to PPE that MNR failed to provide to

Plaintiff.  (Chart at 44).  Further, the fact that MNR does not have records of what PPE Plaintiff was provided as of the February 24, 2019 incident does not mean that the PPE was not provided to Plaintiff.  Accordingly, Defendant need not provide any further response to Request Nos. 89 and 90.

### K.  Requests for Identification of Responsive Page Numbers

In certain instances (Request Nos. 23, 91-92), Plaintiff does not dispute that Defendant has produced the responsive documents, but claims that, because the documents are lengthy, Defendant should be required to pinpoint the particular pages or passages that contain the relevant information.  Plaintiff is incorrect.  Rule 34 of the Federal Rules of Civil Procedure "does not require the producing party to identify in its written response to each document request exactly which page is responsive to each request."  *Rutherford v. PaloVerde Health Care Dist.*, No. ED CV13-1247-JAK (SPx), 2014 WL 12633523, at *4 (C.D. Cal. Apr. 25, 2014); *see also Jackson v. Edwards*, No. 99 Civ. 982 (JSR) (HBP), 2000 WL 782947, at *4 (S.D.N.Y. June 16, 2000) (rejecting plaintiff's demand "to have defendants specify the page on which responsive information can be found" for purposes of document requests).

### L.  Requests Relating to Complaints by Plaintiff

Request No. 124 seeks documents relating to complaints made by Plaintiff to the Federal Railroad Administration ("FRA").  Defendant states that it will search available files from its Office of System Safety ("OSS") department, which interacts with the FRA, if Plaintiff can specify the date and subject matter of the complaint and any identifying complaint or case number.  (Chart at 68).  Plaintiff does not

provide any such particulars, but instead asserts, unhelpfully, that Defendant "would know" if it replied to an FRA complaint filed by Plaintiff because "after all, how often does an employee complain to an entity like the [FRA]?" (*Id.*).

Defendant's counsel shall make reasonable inquiries of MNR's OSS department to ascertain if it is aware of any FRA complaints filed by Plaintiff and if it has any index or similar method of locating such a FRA complaint. It shall then provide Plaintiff with any responsive documents obtained through such inquiries or a representation that it was unable to locate any such records.

Request No. 127a seeks documents relating to all complaints and grievances filed by Plaintiff against Famularo and several other individuals. As noted above, the Court has already ruled that Plaintiff is entitled to documents relating to any complaints he made about the conduct of Famularo going back to November 2015. To the extent such documents exist that are not responsive to Request Nos. 30-32 (which are limited to complaints filed with the US EEOC and MNR's EEO and Diversity departments), and/or other Requests, Defendant shall produce them pursuant to this Request. With respect to complaints by Plaintiff against the other individuals referenced in Request No. 127a, Plaintiff has not made an adequate showing that discovery regarding such complaints would be relevant and proportionate to the claims in this case.

## M. Requests Relating to Policies and Procedures

Request Nos. 128 to 132 seek policies and procedures and similar types of documents "defining the order and/or sequence"—as well as "any variances in the

order and/or sequence"— "in which the various jobs and tasks were to be performed during the course of the project on which plaintiff was working" on February 24, 2019 (Request Nos. 128 and 129); "defining what constitutes a third-railman's work area for purposes of the presence of live current within said work area" (Request No. 130); and "defining whether or not"—and "under what circumstances"—"the presence of live current within a third-railman's work area is permissible or not" (Request Nos. 131 and 132). Defendant objected to these requests as, *inter alia*, vague and confusing. (Dkt. No. 47-3 at 57-58).

It does not appear that the meet-and-confer process resulted in any agreed-upon definition of the scope of these requests. (*See* Chart at 69-71). Nor does Plaintiff provide any clarity now; he simply says, as to Request No. 128, that "[t]hese are the construction plans" (even though none of the 18 types of documents identified in the Request mentions construction plans) and refers back to his responses in the Chart to Request Nos. 93-97. (*Id.*). Defendant has indicated that at least some of the information Plaintiff appears to be seeking would be found in work records for February 24, 2019 and training materials which it has previously produced. (*Id.*). Given the breadth and unintelligibility of the Requests as written, the Court will not order Defendant to do more.

**N.  Requests Relating to Joe Caria**

Request Nos. 167 and 168 seek documents relating to an incident that resulted in Joe Caria, an MNR supervisor, being disciplined for failing to report a

safety incident,[6] and to a meeting that Caria attended in 2014 involving safety issues.  (Chart at 75-76).  Plaintiff suggests that testimony from Caria's disciplinary proceeding would "show[] what plaintiff's supervisors did/did not do" in the incident in which Plaintiff was injured.  (*Id.*)  This is an insufficient basis upon which to order discovery of these materials, given that Caria (who left MNR in 2017) was not one of the supervisors involved in the February 24, 2019 incident and given that there is no issue in this case regarding a failure to report the February 24, 2019 incident.  Nor does Plaintiff explain how the unidentified "safety issues" discussed at the 2014 meeting are relevant to the issues involved in the February 24, 2019 incident.  Accordingly, Plaintiff has failed to show how discovery on the matters covered by Request Nos. 167 and 168 is relevant and proportionate in this action.

## O.  Miscellaneous Requests

Request No. 25 seeks "[r]ecords of" Plaintiff and eleven individuals identified as witnesses in Defendant's Rule 26(a) disclosures.  (Dkt. No. 47-3 at 14).  It does not specify which "records" are sought and, on its face, calls for production of all records of these twelve individuals for an indefinite time period.  Defendant represents that it produced all documents described in its Rule 26(a) disclosures and objects to Plaintiff's broad and vague request for additional unspecified "records."  (Chart at 4).  The Court agrees with Defendant's objection.

Request No. 110 seeks the last known address for Mike Allen, described by Plaintiff as a "former employee" of MNR.  (Dkt No. 47-3 at 46).  Defendant responds

---

[6] *See* Chart at 75-76; *Carria v. Metro-North Commuter Railroad*, 457 F. Supp. 3d 301, 306 (S.D.N.Y. 2020).

that Allen is still employed by MNR.  (Chart at 62).  While that may be true, Plaintiff has a legitimate need for Allen's address if he wishes to serve a Rule 45 subpoena on Allen.  *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ. 5345 (KHP) (AJN), 2017 WL 11699076, at *6 (S.D.N.Y. June 16, 2017) ("A corporate employee . . . who does not qualify as an officer, director, or managing agent is not subject to deposition by notice . . . and generally must be subpoenaed pursuant to Federal Rule 45.").  Defendant shall provide it.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to compel responses to the document requests in its Notice for Discovery is **GRANTED in part** and **DENIED in part**, to the extent set forth above.

Due to the length of time required to adjudicate this motion to compel, the Court hereby orders the parties to comply with the following schedule, which shall supersede all prior deadlines set by the Court (*see* Dkt. No. 21; Minute Entry dated November 21, 2023):

1. No later than **14 days from the date of this Order**, Defendant shall submit a letter to the Court making appropriate representations outlined above as to Request Nos. 6, 87-88, 93-98, 103, 105-06, 108-09, 111-12, 122, 127a, and 179-80; Request Nos. 8, 14, and 28; and Request Nos. 37-64.

2. No later than **30 days from the date of this Order**, Defendant shall complete its production of documents responsive to Request No. 22 and Request Nos. 7, 71-72, 100-02, 104, 107, 114, 147, and 174-77.

3. Defendant shall promptly complete its production of other responsive documents, as required by this Order, so as to ensure that fact discovery will be complete by the deadline set forth below.

4. Plaintiff's expert disclosures are due by **May 14, 2024**.

5. Defendant's expert disclosures are due by **June 14, 2024**.

6. Replies to any expert report are due by **June 28, 2024**.

7. Fact discovery shall be complete by **August 14, 2024**.

8. Pre-motion summary judgment letters, if any, are due by **August 28, 2024**.

The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 45 and 47.

      **SO ORDERED.**

DATED:    New York, New York
           March 13, 2024

                                                   _____
                                                 GARY STEIN
                                                 United States Magistrate Judge